Citation Nr: 1237372 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 10-06 710 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Paul, Minnesota


THE ISSUES

1. Entitlement to service connection for a low back disability.

2. Entitlement to an initial evaluation in excess of 10 percent for residuals of a fracture of the right mandible.

3. Entitlement to an initial evaluation in excess of 10 percent for residual paresthesia, right inferior alveolar nerve.

4. Entitlement to a total disability rating due to service-connected disability based on individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Kenneth L. LaVan, Attorney



WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

James R. Siegel, Counsel


INTRODUCTION

The Veteran served on active duty from March 1984 to April 1991.

These matters are before the Board of Veterans' Appeals (Board) on appeal from August 2009 and March 2011 rating decisions of the Department of Veterans Affairs Regional Office (RO) in St. Paul, Minnesota. The August 2009 rating decision granted service connection for residuals of a right mandible fracture, and assigned a 10 percent initial rating, effective from February 24, 2009. The rating decision also reopened and denied a claim for service connection for a low back disability. The March 2011 rating decision granted service connection for residual paresthesia, right inferior alveolar nerve, and assigned a 10 percent rating, effective from February 8, 2011. 

These matters were originally before the Board of Veterans' Appeals (Board) in February 2012, when it was decided that new and material evidence had been received to reopen the claim for service connection for a low back disability. The reopened claim for service connection, the claims for higher initial ratings, as well as the claim for a TDIU, were remanded for additional development of the record. As the requested actions have been accomplished, the case is again before the Board for appellate consideration. 

The Board notes the Veteran testified at a hearing before the undersigned Veterans Law Judge sitting at the RO in October 2011. He requested another hearing, which was scheduled for August 2012, but cancelled that hearing in July 2012, and indicated that he did not wish to be rescheduled for a hearing. 

The issue of entitlement to service connection for a psychiatric disability claimed as secondary to a service-connected disability has been raised by the record, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 


FINDINGS OF FACT

1. The Veteran's in-service low back complaints were acute and transitory and resolved without residual disability.

2. There has been no demonstration by the most probative competent medical, or competent and credible lay, evidence of record that the Veteran's low back disability is etiologically related to military service. 

3. The residuals of a fracture of the right mandible are manifested by pain and tenderness.

4. The Veteran's alveolar nerve injury is not more than mild in severity.

5. Service connection is in effect for residuals of a fracture of the right mandible, and for residual paresthesia of the right inferior alveolar nerve. Each disability is evaluated as 10 percent disabling, and the combined schedular rating is 20 percent. 

6. The Veteran is still working, and has had occupational experience as a car salesman, production manager, line attendant and auditor.

7. There has been no demonstration by competent medical, or competent and credible lay, evidence of record, that the Veteran's service-connected disabilities are so severe as to prevent him from engaging in substantially gainful employment consistent with his level of education and occupational experience.


CONCLUSIONS OF LAW

1. A low back disability was not incurred in or aggravated by active service, nor may arthritis be presumed to have been so incurred or aggravated. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5107 (West 2002); 38 C.F.R. §§ 3.307, 3.309 (2012).

2. The criteria for an initial evaluation in excess of 10 percent for residuals of a fracture of the right mandible have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 4.73, 4.150, Diagnostic Codes 5325, 9903, 9904, 9905 (2012).

3. The criteria for an initial evaluation in excess of 10 percent for residual paresthesia of the right inferior alveolar nerve have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. § 4.124a, Diagnostic Code 8205 (2012).

4. The criteria for TDIU have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2012).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act

The Veterans Claims Assistance Act (VCAA) redefined VA's duty to assist the appellant in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2012).


Duty to Notify

The notice requirements of the VCAA require VA to notify a Veteran of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 38 C.F.R. § 3.159(b) (2012). The requirements apply to all five elements of a service connection claim: veteran status, existence of a disability, a connection between a veteran's service and the disability, degree of disability, and effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

VCAA notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (in this case, the RO). Id; see also Pelegrini v. Principi, 18 Vet. App. 112 (2004). However, insufficiency in the timing or content of VCAA notice is harmless if the errors are not prejudicial to the claimant. Conway v. Principi, 353 F.3d 1369, 1374 (Fed. Cir. 2004) (VCAA notice errors are reviewed under a prejudicial error rule). In any event, where complete notice is not timely accomplished, such error may be cured by issuance of a fully compliant notice, followed by readjudication of the claim. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

By letter dated June 2009, issued prior to the rating decision on appeal, the RO provided notice to the Veteran regarding what information and evidence were needed to substantiate his claim for service connection, as well as what information and evidence must be submitted by the Veteran and what information and evidence will be obtained by VA. This letter also advised the Veteran of how the VA assigns a disability rating and an effective date, and the type of evidence which impacts such. A December 2009 letter provided the requisite information pertaining to a claim for TDIU.

The Veteran's filing of a notice of disagreement as to the initial ratings assigned for residuals of a fracture of the right mandible, and for residual paresthesia of the right inferior alveolar nerve, does not trigger additional notice obligations under 38 U.S.C.A. § 5103(a). 38 C.F.R. § 3.159(b)(3) (2012). Rather, the appellant's appeal as to the initial rating assignment triggers VA's statutory duties under 38 U.S.C.A. §§ 5104 and 7105, as well as regulatory duties under 38 C.F.R. § 3.103. As a consequence, the VA is only required to advise the appellant of what is necessary to obtain the maximum benefit allowed by the evidence and the law. This has been accomplished here, as will be discussed below. 

A January 2010 statement of the case, and a May 2012 supplemental statement of the case, provided the Veteran with the relevant diagnostic code criteria for rating his service-connected disabilities, and a description of the rating formula for all possible schedular ratings under the pertinent Diagnostic Codes was included. In letters dated in June and December 2009, the Veteran was provided with the relevant law and regulations pertaining to effective dates. The appellant was thus informed of what was needed not only to achieve the next-higher schedular rating, but also to obtain all schedular ratings above that assigned, for his service-connected disabilities, and he was also advised of what was needed to achieve an earlier effective date. Thus, VA's duties under sections 5104 and 7105 have been satisfied. 

Duty to Assist

The record reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the appellant. Specifically, the information and evidence that have been associated with the claims file include the service treatment records, private and VA medical records, the reports of VA examinations, Social Security Administration records (on Virtual VA), a statement from the Veteran's spouse and his testimony at a hearing before the undersigned in October 2011.

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim, as defined by law. McLendon v. Nicholson, 20 Vet. App. 79 (2006). If VA provides a claimant with an examination in accordance with the duty to assist, the examination must be adequate. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). The probative value of a medical opinion is derived from a factually accurate, fully articulated, and soundly reasoned opinion. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). 

VA examinations were conducted, and opinions regarding the etiology of the Veteran's low back disability have been obtained. The VA opinions were rendered by medical professionals who reviewed the claims folder, clinically evaluated the Veteran, and provided a factual foundation for the conclusions that were reached. Therefore, the Board finds that the opinions are adequate. See Nieves-Rodriguez, 22 Vet. App. at 304.

As noted, VA clinical examinations with respect to the increased rating issues on appeal have been obtained. 38 C.F.R. § 3.159(c) (4). To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). As noted below, the Board finds that the VA clinical examinations obtained in this case are more than adequate, as they are predicated on a full reading of the medical records in the Veteran's claims file and clinical examination of the Veteran. As appropriate, clinical findings pertinent to the schedular criteria for rating the disability at issue were obtained. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination with respect to the issues on appeal has been met. 38 C.F.R. § 3.159(c) (4).

As discussed above, the appellant was notified and made aware of the evidence needed to substantiate his claims, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. The Veteran has been an active participant in the claims process by submitting evidence and providing testimony. Thus, he has been provided with a meaningful opportunity to participate in the claims process and has done so. Any error in the sequence of events or content of the notice is not shown to have affected the essential fairness of the adjudication or to cause injury to the claimant. Therefore, any such error is harmless and does not prohibit consideration of these matters. See Conway, supra; Dingess, supra; see also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).

Analysis

The Board has reviewed all the evidence in the appellant's claims file. Although there is an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the analysis below will focus specifically on what evidence is needed to substantiate the claims and what the evidence in the claims file shows, or fails to show, with respect to the claims. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

 I. Service connection 

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

Where a veteran served 90 days or more during a period of war, or during peacetime service after December 31, 1946, and arthritis becomes manifest to a degree of 10 percent or more within one year from date of termination of such service, such disease shall be presumed to have been incurred in or aggravated by service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309.

In order to prevail on the issue of service connection on a direct-incurrence basis there must be medical evidence of a current disability; medical evidence, or in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and competent evidence of a nexus between an in-service injury or disease and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Barr v. Nicholson, 21 Vet. App. 303 (2007); Pond v. West, 12 Vet App. 341, 346 (1999).

The Veteran asserts service connection is warranted for a low back disability. He claims he sustained two injuries in service, and that he has had problems with his low back ever since. 

The service treatment records disclose the Veteran was referred for medical evaluation in March 1984 for complaints of lower back pain and chills. No findings concerning the back were recorded. When seen in July 1986, it was indicated the Veteran had been seen two weeks earlier with hip pain, which resolved. He now related a one week history of acute back strain when lifting boxes. The pain progressed, with some radiation down the left posterior thigh, and pain in the lower back which increased with flexion at the hip. An examination of the lower back revealed no point tenderness bilaterally. There were slight radicular symptoms on straight leg raising. The assessments were acute lumbar muscle strain and left sciatica. Medication and physical therapy were prescribed. The referral to physical therapy noted the Veteran had strained his lower back lifting the previous week. Also in July 1986, it was noted the sacroiliac joint was tender. The assessment was probable sacroiliac joint syndrome. Still later that month, the Veteran was seen when he ran out of medications. The assessment was lumbosacral strain. 

The Veteran complained of low back pain in September 1989. The assessment was upper respiratory infection. He reported an acute low back strain in January 1990 while playing soccer the previous day. The impression was acute low back strain. When he was seen in February 1991, he noted left hip pain. He stated his initial injury was in 1989 when he fell onto a steel flight deck, contusing the left hip. He described a recent re-injury in December 1990 when he slipped on a ladder. An examination demonstrated full range of motion of the back without pain. Motor/sensory evaluations were intact. There was no diagnosis concerning the low back. X-rays of the lumbar spine in March 1991 were taken due to persistent low back pain. The findings were consistent with muscle spasm. There was no other significant abnormality. 

Magnetic resonance imaging of the lumbar spine was accomplished at a private facility in April 2004. The clinical indication was low back pain, status post fall, date not specified. The impressions were mild degenerative disc disease at L4-5 and L5-6, with diffuse annular bulge and minimal spondylosis. 

The Veteran was admitted to a private hospital in May 2004 with unrelenting back and leg pain. He had reportedly fallen down stairs the previous year. It was stated he underwent a course of chiropractic care with increasing pain radiating down his leg. He underwent a hemilaminectomy, discectomy, and foraminotomy. The diagnoses on discharge were back pain, leg pain, lumbar radiculopathy and herniated lumbar disc.

On his April 2005 claim for service connection for a low back disability, the Veteran reported that while on the flight deck of the USS Kitty Hawk in 1989, he fell and injured his back. He also noted that while on shore duty in 1991, he fell off a ladder and re-injured his back. He stated he was treated following both injuries. He added that on or about March 2003, he again re-injured his back by "slipping." He states he began treatment with a chiropractor. 

In a statement dated in June 2005, D.A. Anderson, a chiropractor, related he had treated the Veteran for the previous two years for a low back condition. He noted that during the initial consultation, the Veteran complained of a constant dull/achy left-sided low back pain with radiation into the left gluteal and hip region. It was indicated the condition had been present for quite some time, but was progressively worsening of late without any known cause. The Veteran's past history revealed a significant injury in 1988 when he fell on the flight deck in service. The chiropractor noted he reviewed the medical records and radiographs from that injury and the findings were very similar to what they were on his initial examination. After comparing the subjective complaints, objective findings and radiographs from the initial injury in 1988 to the current radiographs, he stated that, with a reasonable degree of chiropractic certainty, the Veteran's current condition began in 1988, when he was injured in service.

A VA examination of the joints was conducted in August 2005. The examiner indicated the Veteran's claims folder was available, but not his medical records. The Veteran asserted he had a slip in 2003 when he re-injured his back, but the details were not known. Following an examination, the impression was herniated nucleus pulposus, status post laminectomy with residual neuropathy, L5 distribution. The examiner commented she reviewed the medical records. She acknowledged the Veteran had a fall in 1989 while in service and injured his left hip. She noted he was seen in 1991 for a re-injury. She stated there was one instance in service when the Veteran was seen for an acute lumbar strain. The examiner pointed out there was no mention in the medical record of the Veteran having any neuropathy, paralysis or numbness. She commented it would be mere speculation to determine a link between the Veteran's current back condition and service.

VA outpatient treatment records disclose the Veteran was seen in April 2009 with a long-standing history of low back pain that started when he fell on a flight deck in "1984" when he was 18 years old. It was noted he fell from a ladder in 1991, and that both of these injuries caused low back pain. He stated the pain was tolerable for many years and he was able to live with his symptoms. He related the pain got progressively worse, and he had surgery in 2004. 

The Veteran was afforded a VA examination of the spine in July 2009. The examiner noted he reviewed the claims folder and medical records. The Veteran related he first injured his back in 1988 when he fell on the flight deck. He maintained he had left hip pain at that time. He noted he got better but would have frequent flare-ups. He said he re-injured his back when he fell off a wing in 1991, and had left-sided pain. The examiner noted the report of a fall in 2003 that resulted in additional back injury. He summarized the Veteran's in-service treatment for his back complaints. He noted there was no mention in the medical records of the Veteran having any neuropathy, paralysis, weakness or numbness. The diagnosis was status post left L6-S1 posterior decompression with hemilaminectomy, medial facetectomy, discectomy and foraminotomy. The examiner concluded it was less likely as not caused by or the result of injuries in service. He noted the Veteran had several injuries in service to his low back and left hip, but never had any sensory deficits or weakness. There was no evidence the Veteran was treated for low back pain or left leg neuropathies within five years of his discharge from service. He added there appeared to be an intervening/interceding event when he slipped in 2003, with surgery in 2004.

On VA general medical examination in February 2010, it was noted the Veteran's claims folder was not available, but medical records were reviewed. The Veteran described two in-service injuries, one in 1988 when he fell onto a flight deck and another when he fell off the wing of an airplane while performing routine maintenance. He stated that both times he fell onto his back. He reported he was treated conservatively for this. The examiner opined that the Veteran's low back disability was not service-connected. His rationale was that based on the history and medical records, the Veteran did not seek significant treatment for back pain in service and five years post-service. It appeared the traumatic injuries to the back were soft tissue in nature, resolved, and did not lead to the disc herniation several years later. If the Veteran had sustained a traumatically-induced disc herniation, surgical intervention would have been completed close in time to the injury. 

In a statement dated in October 2011, the Veteran's spouse reported that when she met the Veteran in 1993, he was always having problems with his back, and that he complained of back pain on many occasions. She asserted he treated the back pain with over-the-counter medications and ice or heat. His back pain progressively worsened. 

In October 2011, D.A. Anderson, the Veteran's chiropractor, completed a residual functional capacity questionnaire for the Social Security Administration. He listed a diagnosis of lumbar radiculopathy, secondary to degenerative changes, with previous laminectomy and residual scar tissue formation. On a "service-connected questionnaire," the chiropractor checked a statement that it was more than likely that the current diagnosis listed was a direct result of the Veteran's service. 

The Veteran was seen by M.T. Watson, M.D. in November 2011 with complaints of low back since 1988. The assessments were lumbar degenerative disc disease, chronic low back pain and lumbar stenosis. The examiner stated it was reasonable that the Veteran's service injury at least contributed to his spinal issues. He acknowledged he had no way of proving this.

The Veteran was most recently examined by the VA in May 2012. The examiner noted he reviewed the Veteran's claims folder. The Veteran reported two falls on board a ship in 1988 while engaged in flight deck operations or aircraft maintenance. He fell over nine feet in the second fall (from the wing of a P-3) and was knocked onto his back by an aircraft pivoting to the catapult on the first fall. He stated he injured his back both times and fell on the left side. The examiner summarized the in-service treatment for the Veteran's back complaints. The diagnoses were lumbar spine degenerative disc disease, lumbar spinal stenosis and left lumbar spine, L6-S1 discectomy, herniated nucleus pulposus, foot drop and radiculopathy, status post left L6 hemilaminectomy, left L6-S1 discectomy, left S1 root foraminotomy with resolution of herniated nucleus pulposus, foot drop and left radiculopathy. The VA examiner acknowledged the opinion of Dr. Watson, but noted he provided no rationale for his opinion, and that he did not review the claims folder. He also pointed out that the Veteran's complaints in 1991 were of left hip pain and not low back pain. He added that acute lumbar strain was an injury to the muscles and ligaments of the back, and this was a self-limited injury, lasting several days to several months. He also commented there was no significant medical evidence or rationale supporting a causal relationship between one or several limited episodes of lumbar strain or acute low back pain and the eventual development of degenerative disc disease of the lumbar spine.

The examiner concluded that the current disability of the low back, to include any associated neurological symptoms, was less likely as not causally related to any of the falls and complaints in service. He observed that the Veteran's low back surgery in 2004 was 16 years after injuries on active duty. He stated this does not provide probative evidence for a causal nexus between his current claimed low back disability and his history of two injuries to the lower back due to falls reflected in the service treatment records. He pointed out that there was no documentation in the claims folder that the Veteran was treated for low back problems within five years of his separation from service. There was treatment and surgery for the low back in 2004, but this was not causally related to the injuries noted in the service treatment records. 

The Board acknowledges there are several medical opinions supporting the Veteran's claim. As noted above, the Veteran's chiropractor concluded in June 2005 that the Veteran's current back condition began in 1988. It is noted he apparently reviewed at least some of the medical records from the Veteran's in-service treatment. In addition, Dr. Watson stated in November 2011 that, while he could not prove it, it was reasonable that the Veteran's service injury contributed to his low back disability.

These opinions are not consistent with the overall record and are less probative than the conclusions of the VA examinations. The Board acknowledges the Veteran was found to have lumbar muscle strain and sciatica when he was seen for low back pain after lifting boxes in July 1986. There were no other indications of any radiating low back pain during service. The Veteran noted in February 1991 that he had contused his left hip when he fell on a flight deck in 1989. He said he had a re-injury in December 1990 when he slipped on a ladder. The Board notes that his complaint in February 1991 involved the left hip and it appears from the record that the injuries had been to the hip and not, as he now maintains, to his low back. In addition, it is significant to point out that an examination of the back in February 1991 demonstrated full range of motion without pain. There was no indication of any neurological impairment, and no diagnosis referable to the low back was made at that time. 

During the hearing before the undersigned in October 2011, the Veteran's attorney argued that the July 2009 VA examiner had not pointed to any medical evidence to support his statement that the Veteran had an intervening event in 2003. It is significant to point out that, in his April 2005 claim for service connection, the Veteran referred to a re-injury in 2003. In addition, on the August 2005 VA examination, the Veteran specifically stated he had again injured his back when he slipped in 2003. This is consistent with the fact he apparently first sought treatment for his back following service in 2003. 

The Board notes that it was concluded following the July 2009, February 2010 and May 2012 VA examinations that the Veteran's low back disability was not related to service. It was stated in July 2009 that the service treatment records did not show any sensory deficits or weakness and there was no indication of treatment for low back pain or neuropathies in the initial post-service years. Similarly, following the February 2010 VA examination, the examiner, who reviewed the claims folder, indicated the Veteran had not received significant treatment for back pain in service or within five years after service. He added that the Veteran's in-service back problems were soft tissue in nature and would not lead to disc herniation. Finally, the May 2012 VA examiner observed the Veteran's complaints in 1991 involved the left hip and that lumbar strain was an acute problem. He pointed out that the more than a decade elapsed prior to the Veteran's surgery in 2004. 

The Board acknowledges the conclusions of Dr. Watson, and the private chiropractor to the effect the Veteran's low back disability is related to service. An evaluation of the probative value of a medical opinion is based on the medical expert's personal examination of the patient, the examiner's knowledge and skill in analyzing the data, and the medical conclusions reached. The credibility and weight to be attached to such opinions are within the providence of the Board as adjudicators. Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). Greater weight may be placed on one physician's opinion over another depending on factors such as reasoning employed by the physicians and the extent to which they reviewed prior clinical records and other evidence. Gabrielson v. Brown, 7 Vet. App. 36, 40 (1994). In this case, the Board finds the opinion of the VA examiners to be entitled to the greatest probative weight. The Board concedes the chiropractor had access to some of the Veteran's service treatment records. He did not, however, review the entire medical record. In addition, his opinion failed to consider the fact the Veteran had again injured his lower spine in 2003. Under the circumstances, the Board finds the VA opinions to be of greater probative value.

The Board acknowledges the Veteran's assertions that he has a low back disability that is related to service. However, as a lay person, he is not competent to diagnose a low back disability, or render an opinion as to its cause or etiology, as that requires medical expertise which he is not shown to possess. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed.Cir.2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis). The Veteran and his wife are competent to testify as to the fact he has experienced trouble with his low back since service. However, where the determinative issue involves a question of medical diagnosis or causation, only individuals possessing specialized medical training and knowledge are competent to render such an opinion. Espiritu v. Derwinski, 2 Vet. App. 492 (1992). The evidence does not reflect that either the Veteran or his spouse currently possess a recognized degree of medical knowledge that would render their opinions on medical diagnosis or causation competent. 

The Board concludes, accordingly, that the preponderance of the evidence is against the claim for service connection for a low back disability. 

 II. Increased rating 

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disabilities upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Where the appellant has expressed dissatisfaction with the assignment of an initial rating following an initial award of service connection for that disability, separate ratings can be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. Fenderson, 12 Vet. App. 119 (1999); see also Hart v. Mansfield, 21 Vet. App 505 (2007).

VA regulations provide that, for facial muscle injuries, functional impairment should be evaluated as seventh (facial) cranial nerve neuropathy (diagnostic code 8207), disfiguring scar (diagnostic code 7800), or under other appropriate criteria with a minimum rating of ten percent if interfering to any extent with mastication. 38 C.F.R. § 4.73, Diagnostic Code 5325. 

For seventh (Facial) cranial nerve impairments, including neuritis and neuralgia, ratings are provided for manifestations of complete paralysis (30 percent), severe incomplete paralysis (20 percent), or moderate incomplete paralysis (10 percent). It is noted that the rating is dependent upon the relative loss of innervation of facial muscles. 38 C.F.R. § 4.124a, Diagnostic Code 8207. 

A 30 percent evaluation may be assigned for nonunion of the mandible that is severe. When moderate, a 10 percent evaluation may be assigned. The rating is dependent upon degree of motion and relative loss of masticatory function. 38 C.F.R. § 4.150, Diagnostic Code 9903.

A 20 percent evaluation may be assigned for malunion of the mandible with severe displacement. When moderate, a 10 percent evaluation may be assigned. The rating is dependent upon degree of motion and relative loss of masticatory function. 38 C.F.R. § 4.150, Diagnostic Code 9904.

Under Diagnostic Code 9905, a 10 percent rating is warranted when the range of lateral excursion of temporomandibular articulation is limited to from 0 to 4 millimeters or the inter-incisal range is limited to 31 to 40 millimeters; a 20 percent rating is applicable when the inter-incisal range is limited to 21 to 30 millimeters; a 30 percent rating is for contemplation when the inter-incisal range is limited to 11 to 20 mm; and a 40 percent rating is assigned when the range is limited to 0 to 10 millimeters. 38 C.F.R. § 4.150, Diagnostic Code 9905.

On VA dental examination in July 2009, the Veteran complained of jaw pain from time to time. He described the pain as a "knot" that caused him difficulty opening. He said he had to massage the jaw to get it to open. It was not associated with a clicking or popping of the jaw per se. The pain appeared to be in the muscle region below the temporomandibular joint. An examination demonstrated pain to palpation in the right masseter muscle midbelly. The pain was about 4/10 when palpated by the examiner. The maximum interincisal opening was 48 millimeters. Repeated opening caused some fatigue of the musculature, but no decreased range of motion. Lateral excursions were to 8 millimeters, bilaterally. Maximal protrusive excursion was 7 millimeters. Resistive muscle testing caused some discomfort in the right masseter muscle midbelly on a clench test. There was no pain on opening and protrusion resistive muscle testing. The temporomandibular joints were without evidence of noise, and rotated and translated fully smoothly. It was concluded the Veteran had a right temporomandibular disorder consisting of myofascial pain in the right masseter muscle. This was stated to be episodic. 

A VA general medical examination was conducted in February 2010. The Veteran reported his jaw symptoms were quiescent. Intermittent clicking, mainly on the right side, was noted on review of systems. The diagnosis was jaw fracture

The Veteran was afforded a dental examination by the VA in February 2011. He related his jaw symptoms were progressive, and that chewing exacerbated the pain. He described several different kinds of pain. One occurred within the muscles of mastication, predominantly the right masseter muscle. He also described a knot and spasm that occur, which limit the opening of his mouth and results in pain he can place his finger on, palpate and make worse. By massaging it, the Veteran can get that tight knot within the muscle to release. He also stated that as his myofascial and muscle pain get worse, his temporomandibular joint pain increases. 

On testing of cranial nerves, two point discrimination was diminished and general brush stroke sensation was slightly diminished over the inferior alveolar distribution of the right third division of the trigeminal nerve. An examination of the muscles of mastication revealed tenderness within the temporalis insertion into the coronoid process on the right side, which the examiner said was 2/4. There was also tenderness in the right masseter muscle right at its insertion into the angle of the mandible, 2/4. No masses were appreciated. On full contraction of the masticatory muscles, it appeared that the right muscle, right masseter, was larger than the left. Palpation of the temporomandibular joints revealed tenderness to the lateral capsule and transauricularly in the right temporomandibular joint, 2+/4. The Veteran stated it was more painful than the muscle. There was no tenderness on the left side, in either the muscles of mastication or the temporomandibular joint. Auscultation of the joint demonstrated soft, inconsistent rubbing sounds in the right side, and there was a tendency with opening for the jaw to deflect and deviate to the right side. The condylar motion was rotational and translatory on the left and mostly rotation on the right. There was asymmetrical movement which occurred to the mandicular condyles. 

Auscultation of the joint revealed intermittent clicks in the right joint. The clicks were not reciprocal and were noted at about 24 millimeters of incisal opening, with deflection and deviation to the right side. Incisal opening measurements done by repeat examination and with multiple trials of testing showed a maximal incisal opening of 40 to 42 millimeters, if really pushed. At 42 millimeters, there was pain and deflection to the right. Lateral excursive movements demonstrated 6 millimeters of movement going from the midline to the right and 4 to 5 millimeters of movement going from the midline to the left. The examiner also noted residual paresthesia, altered function, associated with the right inferior alveolar nerve. 

The Veteran was again afforded a dental examination by the VA in May 2012. His complaints related mainly to right jaw pain. An examination disclosed there was no difference in the two point discrimination from the right to the left of the mandible. It was very subtle to note any paresthesia he had, but he complained, subjectively, of paresthesias of the right third division of the trigeminal nerve. The altered sensation was apparently unchanged from the previous examination. There appeared to be hypertrophy of the temporalis muscles bilaterally and the masseter muscles bilaterally. There was pain to palpation in the right masseter muscle. Six opening and closing cycles of the jaw caused pain in the right masseter muscle and decreased range of motion of the jaw from 42 to 35 millimeters, with complaints of pain in the right jaw that radiated into the right temple region. Right and left lateral excursion was 7 millimeters, and maximum protrusive excursion was 8 millimeters. The initial 42 millimeter interincisal opening was not offered, but the Veteran opened 20 millimeters and the examiner had to ask him to stretch to open wide, and he was able to do so to 42 millimeters. The right masseter muscle pain was fairly significant, and it was in the mid body of the masseter muscle. There was slight crepitus in both temporomandibular joints; it was not painful on examination. 

The examiner noted no clicking or popping of the temporomandibular joints. He stated there appeared to be slight paresthesia of the right third division of the trigeminal nerve. He added the Veteran had myofascial pain of the right masseter muscle greater than the left. He opined it was more likely than not that the Veteran's jaw pain was secondary to his service-connected mandible fracture. The slight clicking he had from time to time and the jaw fatigue and pain were more than likely related to the residuals of the mandible fracture. With respect to the residual paresthesia of the right alveolar nerve, the examiner commented it was mild. 

The Veteran asserts a higher rating is warranted for residuals of a fracture of the right mandible. He reports he has jaw pain, especially when chewing. 

The Board acknowledges the VA dental examinations have demonstrated the Veteran has pain to palpation of the right masseter muscle. The May 2012 VA examination showed that masseter muscle pain was fairly significant. The Board has considered the Veteran's claim under all appropriate Diagnostic Codes but finds no basis for an increased evaluation. In this regard, the Board notes there is no indication of malunion or nonunion of the mandible. Similarly, intercisal motion was to 42 millimeters. The examinations show that lateral excursion exceeded 4 millimeters at all times. Thus, there is no basis for an increased rating under Diagnostic Code 9905. The findings do not support a compensable evaluation under the pertinent Diagnostic Codes. It is apparent the 10 percent evaluation has been assigned for the Veteran's pain. 

The Board has considered whether factors including functional impairment and pain as addressed under 38 C.F.R. §§ 4.10, 4.40 and 4.45 (2012) would warrant a higher rating for the Veteran's right mandible fracture residuals. See Spurgeon v. Brown, 10 Vet. App. 194 (1997); and DeLuca v. Brown, 8, Vet. App. 202 (1995). The Board concedes the Veteran had pain on motion of the jaw. The May 2012 VA examination demonstrated objective evidence of limitation of motion and pain following motion. However, the additional functional impairment due to pain is contemplated in the evaluation that has been assigned. 

The Veteran also asserts a higher initial evaluation is warranted for residual paresthesia of the right inferior alveolar nerve. As noted above, cranial nerve testing on the February 2011 VA dental examination demonstrated two point discrimination was diminished. It was also indicated that general brush stroke sensation was slightly diminished. Similarly, the May 2012 VA examination showed very subtle paresthesias. The examiner characterized the paresthesia of the right alveolar nerve to be mild. Thus, there is no basis on which an increased rating may be assigned.

The Board acknowledges that the Veteran was competent to report symptoms he experienced, such as pain, and the Board finds him to be credible in this regard. However, the Veteran is not competent to provide an opinion requiring medical knowledge or a clinical examination by a medical professional, such as an opinion addressing whether a service-connected disability satisfies specific rating criteria. See Bostain v. West, 11 Vet. App. 124, 127 (1998), citing Espiritu v. Derwinski, 2 Vet. App. 492 (1992). See also Routen v. Brown, 10 Vet. App. 183, 186 (1997) ("a layperson is generally not capable of opining on matters requiring medical knowledge"). As a result, his assertions cannot constitute competent medical evidence that the Veteran's service-connected residuals of a fracture of the right mandible, or residual paresthesia of the right inferior alveolar nerve warrant higher initial evaluations. As such, the Board concludes that the medical findings on examination are of greater probative value than the allegations regarding the severity of the Veteran's service-connected disabilities. Accordingly, the preponderance of the evidence is against the claim for an initial evaluation in excess of 10 percent for residuals of a fracture of the right mandible, or an initial evaluation in excess of 10 percent for residual paresthesia of the right inferior alveolar nerve.

Additional considerations

The Board has also considered whether the Veteran's service-connected residuals of a fracture of the right mandible or residual paresthesia of the right inferior alveolar nerve present an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards such that referral to the appropriate officials for consideration of extra-schedular ratings is warranted. See 38 C.F.R. § 3.321(b)(1) (2012); Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). In this case there are no exceptional or unusual factors with regard to the Veteran's disabilities. The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluation for that service- connected disability is inadequate. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993) ("[R]ating schedule will apply unless there are 'exceptional or unusual' factors which render application of the schedule impractical."). Here, the rating criteria reasonably describe the Veteran's disability level and symptomatology, and provide for consideration of greater disability and symptoms than currently shown by the evidence. Thus, his disability picture is contemplated by the rating schedule, and the assigned schedular evaluations are, therefore, adequate. See Thun v. Peake, 22 Vet. App. 111, 115 (2008). Consequently, referral for extraschedular consideration is not warranted.

 III. TDIU

VA will grant a total rating for compensation purposes based on unemployability when the evidence shows that the veteran is precluded from obtaining or maintaining any gainful employment consistent with his education and occupational experience, by reason of his service-connected disabilities. 38 C.F.R. §§ 3.340, 3.341, 4.16.

A TDIU rating for compensation purposes may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more; or if there are two or more service-connected disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16(a). For the above purpose of one 60 percent disability or one 40 percent disability, disabilities resulting from a common etiology or a single accident will be considered as one disability. 38 C.F.R. § 4.16(a)(1). 

For a veteran to prevail on a claim for a TDIU rating, the record must reflect some factor which takes the case outside the norm. The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is a recognition that the impairment makes it difficult to obtain and keep employment. The question is whether the veteran is capable of performing the physical and mental acts required by employment, not whether the veteran can find employment. See 38 C.F.R. 4.16(a). Van Hoose v. Brown, 4 Vet. App. 361 (1993).

In determining whether appellant is entitled to a total disability rating based upon individual unemployability, neither appellant's non-service-connected disabilities nor advancing age may be considered. 

The Veteran has been granted service connection for residuals of a fracture of the right mandible and for residual paresthesia of the right inferior alveolar nerve. Each disability is evaluated as 10 percent disabling. The combined schedular evaluation is 20 percent.

In Fisher v. Principi, 4 Vet. App. 57 (1993), the Court held that in a claim for a total rating based on individual unemployability due to service-connected disability, where the disability rating did not entitle the appellant to a total disability rating under 38 C.F.R. § 4.16(a), the rating board must also consider the applicability of 38 C.F.R. § 4.16(b), and that the decision or non-decision by the RO whether to refer a case to the Director for extra-schedular consideration is an adjudicative decision subject to review by the Board and the Court. In this case, the Veteran does not meet the schedular standards under 38 C.F.R. § 4.16(a), and the preponderance of the competent evidence fails to establish that he is unemployable due solely to his service-connected disabilities.

The record reflects the Veteran has work experience as a car salesman, line attendant, production manager and auditor. He was still working 20 to 30 hours per week at the time of the VA examination in May 2012. 

The only evidence supporting the Veteran's claim consists of his statements he is unable to work due to the severity of his service-connected disabilities. The Board acknowledges that he has not always been employed on a full-time basis. The August 2005 VA examination disclosed he worked from 20 to 40 hours per week at a car dealership. He was not on any work restrictions. In addition, when he was seen at a VA outpatient treatment clinic in April 2009, the Veteran indicated he was not working at that time. He was seen for complaints of low back pain and insisted his symptoms were very disabling. There is nothing in the record suggesting that his being out of work was related in any way to his service-connected disabilities.

When examined by the VA in July 2009, the Veteran related he had been laid off his job as a car salesman. It is significant to point out, however, that the Veteran conceded that he was missing two to three days a week due to his nonservice-connected back problems. Similarly, the Veteran stated on the February 2010 VA examination that he quit as a car salesman because his back was bothering him. 

Finally, it is significant to note that following the May 2012 VA dental examination, the examiner concluded neither the right mandible fracture residuals nor the alveolar nerve injury rendered the Veteran unable to secure or follow a substantially gainful occupation. 

In this regard, the Board concludes, therefore, that the medical findings are of greater probative value than the Veteran's allegations regarding his ability to work. Accordingly, the Board finds the preponderance of the evidence is against the claim for a total rating based on individual unemployability due to service-connected disability.

The issue in this case is whether the Veteran is capable of performing the acts required by employment. The only evidence supporting the Veteran's claim that his service-connected residuals of a fracture of the right mandible or residual paresthesia of the right inferior alveolar nerve renders him unable to seek gainful employment consists of his statements. The Veteran is competent to report symptoms he experiences. However, he is not competent to assess whether his symptoms meet VA criteria for a TDIU. The Board concludes the objective findings on the VA examinations are entitled to greater probative weight than the unsupported assertions of the Veteran. In sum, the preponderance of the competent evidence fails to establish that the Veteran is unemployable due solely to his service-connected disabilities, and the claim for TDIU is denied.

 IV. Other considerations

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b) (West 2002); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990).



ORDER

Service connection for a low back disability is denied.

An initial evaluation in excess of 10 percent for residuals of a fracture of the right mandible is denied.

An initial evaluation in excess of 10 percent for residual paresthesia of the right inferior alveolar nerve is denied.

A TDIU is denied.



____________________________________________
U. R. POWELL 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs